**PITNEY–BOWES POSTAGE METER CO. v. UNITED STATES.**

**No. 1133.**

District Court, D. Connecticut.

Oct. 23, 1944.

William A. Kelly, of Cummings & Lockwood, of Stamford, Conn., and George B. Francis, of New York City, for plaintiff.

Robert P. Butler, U. S. Dist. Atty., and Edward J. Lonergan, Asst. U. S. Atty., both of Hartford, Conn., for the Government.

SMITH, District Judge.

This is an action to recover manufacturers' excise taxes paid by plaintiff, before the Court on plaintiff's motion for summary judgment under Rule 56, Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c, and defendant's cross-motion for summary judgment.

Plaintiff had leased postage meters prior to October 1, 1941, under written contracts containing various provisions for termination set forth in Exhibits A, B, C, and D as follows:

Exhibit A—"Termination of Contract. The Mailer may terminate this contract at the end of any quarter by thirty days' previous written notice. The Postage Meter Company may terminate it only upon breach of the terms and conditions by the Mailer."

Exhibit B—"Termination of Contract. This contract shall remain in force for one year from date of the installation of the Postage Meter and from year to year thereafter unless terminated by written notice from either party, at least thirty days previous to the expiration of any year."

Exhibit C—"Termination of Contract. This contract shall remain in force for one year from date of installation of this meter, and from year to year thereafter unless terminated by written notice by either party at least thirty days prior to the end of any contract year.

"In the event of failure by the Mailer to pay meter rental when due, or the issuance of any writ or process in any proceeding against the Mailer, whereby the meter may be levied or attached, the Company may terminate this contract forthwith and shall have the right to enter upon any premises where the meter may be and repossess it, without legal process, and in

such event, the Mailer shall pay accrued rental up to such date of removal, and in addition an amount equal to the rental of the unexpired term of the contract, as liquidated damages. Upon the termination of this contract, the Mailer will deliver the meter to the Company in good condition except for normal wear and tear."

Exhibit D—"Duration of Contract. This contract shall remain in force one year from date of installation of the meter, and from year to year thereafter unless terminated as of the end of any contract year, by written notice by either party to the other, at least thirty days prior to the end of such contract year. In the event of failure by the Mailer to pay meter rental when due, or the issuance of any writ or process in any proceeding against the Mailer, whereby the meter may be levied or attached, the Company may terminate this contract forthwith and shall have the right to enter upon any premises where the meter may be and repossess it, without legal process, and in such event the Mailer shall pay accrued rental up to such date of repossession, and in addition an amount equal to the rental for the unexpired term of the contract as agreed liquidated damages. Upon the termination of this contract the Mailer will deliver the meter to the Company in good condition except for normal wear and tear."

The Internal Revenue Code § 3406, as added by the Revenue Act of 1941, 26 U. S.C.A. Int.Rev.Acts, imposed a manufacturers' excise tax on the sale of mailing machines which included machines of the type produced by the plaintiff. The Code, § 2404, further provides that the lease of an article (including any renewal or any extension of a lease or any subsequent lease of such article) by the manufacturer shall be considered a taxable sale of such article.

The lease contracts involved in this action were all entered into and the machines delivered prior to the effective date of the Revenue Act of 1941.

■ The sole question here, therefore, is whether the language of the termination clauses of the lease contracts Exhibits A, B, C, and D, make them leases, not of indefinite duration, but leases for a definite term with the option or privilege of extension or renewal at the end of each such term.

Both parties look to the cases on real property leases for guidance as to the intention of the parties in their use of the words describing the duration of the leases of the machines by contracts, Exhibits A, B, C, and D. After some conflicting rulings, the Commissioner has determined that the language in these leases is to be construed as for a definite term with an option to renew or extend, so that the failure to take action to terminate operates as an exercise of the option and as a renewal or extension.

The Connecticut cases cited by the defendant are distinguishable from the case at bar, however, in one particular which seems controlling. In each of those cases the lease specifically stated an option or "privilege" which the court held to have been exercised, effectuating an extension rather than a renewal, for which a new written lease might have been necessary. In the case at bar, there is in the terms of the lease in no instance any mention of option or of the necessity of action on the part of the lessee, by holding over or otherwise, to make an extension effective. Each lease establishes an estate which, by its terms, will continue, in the case of Exhibit A indefinitely, in the other cases from period to period, unless some affirmative action is taken to terminate it.

■ It is difficult to conceive of language more apt to create an estate from period to period.

"An estate from period to period is an estate which will continue for successive periods of a year, or successive periods of a fraction of a year, unless it is terminated." Restatement, 1 Property, § 20.

What the defendant here contends for is an interpretation which would add to renewals and extensions of leases entered into prior to October, 1941, leases terminable since that date as also taxable as sales subsequent to October 1, 1941. Perhaps that is an additional class of leases which could be made taxable without undue hardship even though in effect prior to the effective date of the Act. There is no language in the Act or in the Senate Report which accompanied the amendment introducing the language whose meaning is here in question—"including any renewal or any extension of a lease or any subsequent lease of such article"—which would justify such an interpretation, how-

ever. See Senate Report 673, 77th Congress, 1st Session, p. 54, § 553: "In clarification of existing language, this section is amended to provide specially that a lease, including a renewal or extension of a lease, or a subsequent lease of an article shall be considered a taxable sale."

The desirability of making taxable an additional class of leases is for the Congress, and the interpretation of the defendant appears to be a construction strained to reach that result by definition which should be sought, if desirable, by amendment.

Judgment may be entered for the plaintiff for the amount of all four claims set forth in the complaint.

Defendant's motion for summary judgment is denied.

Form of judgment may be submitted by stipulation or on notice.